# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

August 06, 2007



Clarence Maddox
Clerk, U.S. District Court
301 N MIAMI AVE STE 150
MIAMI FL 33128-7788

**Appeal Number: 06-12159-GG**
Case Style: Nurse "BE" v. Michael Chaparro, M.D.
District Court Number:  05-80342 CV-JIC

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued
as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: five folders
    Original record on appeal or review, consisting of: thirteen volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on
the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's
decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision
was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

# United States Court of Appeals
## For the Eleventh Circuit

No. 06-12159

District Court Docket No.
05-80342-CV-COHN

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jul 6, 2007

THOMAS K. KAHN
CLERK

NURSE "BE",

     Plaintiff-Appellee,

versus

COLUMBIA PALMS WEST HOSPITAL LIMITED PARTNERSHIP,
a foreign limited partnership,
d.b.a. Palms West Hospital,

     Defendant-Appellant.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
AUG 0 6 2007
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:    July 6, 2007
For the Court:    Thomas K. Kahn, Clerk
By:    Gilman, Nancy

**NURSE "BE", Plaintiff–Appellee,**

v.

**COLUMBIA PALMS WEST HOSPITAL LIMITED PARTNERSHIP, a foreign limited partnership, d.b.a. Palms West Hospital, Defendant–Appellant.**

No. 06–12159.

United States Court of Appeals, Eleventh Circuit.

July 6, 2007.

**Background:** Nurse brought Title VII action against hospital, her former employer, asserting claims for a sexually hostile work environment and retaliation in connection with her alleged sexual harassment by physician who was not a hospital employee but had hospital privileges. Following denial of hospital's motion for summary judgment, the United States District Court for the Southern District of Florida, No. 05-80342-CV-COHN, James I. Cohn, J., entered judgment on jury verdict awarding $10,000.00 in damages against hospital on the hostile work environment claim, and subsequently denied hospital's motions for judgment as a matter of law and for new trial. Hospital appealed.

**Holdings:** The Court of Appeals, Siler, Circuit Judge, sitting by designation, held that:

(1) nurse's conversation with her supervisor, in which she relayed that physician had made as many as five "harassing" late-night phone calls asking her out on dates but requested that supervisor not report the incident, was insufficient to put hospital on notice of sexual harassment as a matter of law, and so

did not trigger hospital's duty to take reasonable and prompt corrective action, and

(2) once hospital was put on notice of physician's subsequent harassing behavior, which entailed physician making sexual advances toward nurse in supply room, it responded by taking reasonable and prompt corrective action.

Judgment reversed and award vacated.

**1. Federal Courts ⟐776, 801**

Court of Appeals reviews a motion for judgment as a matter of law de novo, drawing all inferences in favor of the non-moving party and affirming the jury verdict unless there is no legal basis upon which the jury could have found for the plaintiff. Fed.Rules Civ.Proc.Rule 50, 28 U.S.C.A.

**2. Civil Rights ⟐1166**

Title VII prohibits sex-based discrimination that alters the terms and conditions of employment. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**3. Civil Rights ⟐1167, 1185**

Employee can establish a Title VII sexbased discrimination violation against an employer in either of two ways: (1) through tangible employment action, that is, discharge, demotion, pay decrease, and the like, or (2) through creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of the work. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2007 Thomson/West

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

**4. Federal Courts ⊳544, 915**

Employee's failure to cross-appeal jury's finding that she did not suffer adverse employment action in the form of a constructive discharge resulted in waiver of the issue on appeal. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**5. Civil Rights ⊳1189**

Where employee has not suffered tangible employment action, employer avoids liability for sex-based discrimination under the *Faragher/Ellerth* defense if: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities it provided. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**6. Civil Rights ⊳1537**

As an affirmative defense, the defendant bears the burden of establishing both elements of the *Faragher/Ellerth* defense to claims of sexual harassment. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**7. Civil Rights ⊳1189**

Nurse's conversation with her supervisor, in which she relayed that physician had made as many as five "harassing" late-night phone calls asking her out on dates but requested that supervisor not report the incident, was insufficient to put hospital on notice of sexual harassment as a matter of law, and so did not trigger hospital's duty, pursuant to the *Faragher/Ellerth* defense, to take reasonable and prompt corrective action; supervisor testified that she took nurse's description of calls as "harassing" to mean "annoying," there was no indication that nurse suggested that any sexually explicit remarks

or even sexual innuendos were made during these calls, at worst nurse's account described a persistent but non-threatening suitor, and nurse premised her complaint on supervisor's promise of confidentiality. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**8. Civil Rights ⊳1189**

Under the *Faragher/Ellerth* defense to claims of sexual harassment, all that is required of an employer's investigation is reasonableness in all of the circumstances. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**9. Civil Rights ⊳1189**

Supervisor's response to nurse's complaint that physician had made as many as five "harassing" late-night phone calls asking her out on dates was reasonable, for purposes of the *Faragher/Ellerth* defense to claims of sexual harassment, where supervisor fulfilled nurse's request to remove her phone number from the staff directory and to keep the matter confidential, and thereafter the phone calls stopped and nurse never reported any further problems with the physician until many months later. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**10. Civil Rights ⊳1189**

Once hospital was put on notice of physician's harassing behavior toward nurse, which entailed making sexual advances toward her in supply room, hospital responded by taking "reasonable and prompt corrective action," for purposes of the *Faragher/Ellerth* defense to claims of sexual harassment; per hospital's sexual harassment policy, supervisors immediately relayed nurse's complaint to human resources (HR) director, HR director commenced investigation the following

NURSE "BE" v. COLUMBIA PALMS WEST HOSP. LTD.  2772

day, forwarded complaint to hospital's chief executive officer (CEO), and contacted physician's supervisor to arrange a meeting, nurse was granted a leave of absence and was removed from specified type of care so as to avoid further contact with physician, HR director advised physician that any further contact with nurse would be deemed inappropriate and passed her investigative report along to physician's supervisors, and nurse did not thereafter report any further incidents with physician. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

———

Appeal from the United States District Court for the Southern District of Florida.

Before TJOFLAT, FAY and SILER,* Circuit Judges.

SILER, Circuit Judge:

Columbia West Hospital Limited Partnership ("Palms West") appeals the decision of the district court, following a jury trial, finding it liable to one of its former nurses, Bobbie Eicke O'Brien ("O'Brien"), for sexual harassment by Michael Chaparro, M.D., a physician with hospital privileges at Palms West, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and under Florida law. Palms West contends that the district court erred in: 1) failing to preclude O'Brien's hostile work environment claim as a matter of law based on its *Faragher/Ellerth*[1] affirmative defense; 2) failing to conclude that

Dr. Chaparro was not a "supervisor" as a matter of law and erroneously instructing the jury on that term; 3) precluding Palms West from establishing that O'Brien's key witness was mentally ill; and 4) failing to grant a new trial based on an impermissibly coercive *Allen*[2] charge. Because Palms West met its burden under *Faragher/Ellerth*, O'Brien failed to set forth a viable sexual harassment claim as a matter of law. Accordingly, we REVERSE the district court's judgment and VACATE the award for fees and costs.

## I. BACKGROUND

### A. Facts Leading to O'Brien's Sexual Harassment Claim

O'Brien worked as a nurse at Palms West from April 2002 until January 2004. Dr. Chaparro was a pediatric neurosurgeon who was employed by Palms West Pediatric Neurosurgery ("Palms Neurosurgery"). Dr. Chaparro had privileges to practice medicine at Palms West, through Palms Neurosurgery, which contracted with hospitals to supply specialty doctors.[3] In fact, Palms West employed only two physicians on its own. Physicians at Palms West direct the medical care that nurses provide to patients, though the nursing staff was directly supervised by other nurses and shift supervisors.

Beginning in late 2002 or early 2003, Dr. Chaparro began calling O'Brien's cellular telephone. The phone calls occurred late at night while O'Brien was at home. During these calls, Dr. Chaparro would ask O'Brien

---

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

2. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

3. Both Palms West and Palms Neurosurgery are affiliated with the Hospital Corporation of American ("HCA"), and had implemented joint polices including the HCA Code of Conduct.

to meet him for a late drink or to go out for dinner. According to O'Brien, she always indicated that she was not interested.

After receiving between three to five calls from Dr. Chaparro, O'Brien went to her supervisor, Cindy Stowers, and asked that her phone number be removed from the staff directory. O'Brien did not want the matter reported to the administration for fear of retaliation and would not identify the caller until Stowers promised that the matter would not be reported. She described the calls as "harassing," which Stowers took to mean "annoying." O'Brien indicated that the calls stopped after Stowers removed her name from the directory, and after she changed her phone number. Stowers never reported the phone calls to human resources.

Thereafter, O'Brien was transferred to the telemetry floor in May 2003, after which Dr. Chaparro began making lewd and sexual comments whenever he saw her and would "rub against her." O'Brien contends that she always rejected Dr. Chaparro's advances.[4] Dr. Chaparro's conduct toward O'Brien culminated in an incident occurring on November 11, 2003, in which Dr. Chaparro asked O'Brien to retrieve a razor from a supply room. Dr. Chaparro entered the closet behind O'Brien and began making sexual advances toward her. O'Brien rebuffed the advances and fled.

O'Brien immediately described the encounter to another nurse, Donya Quesada. During their conversation, Dr. Chaparro approached and brushed his buttocks against O'Brien. Later that evening, O'Brien complained to nurse supervisors David Knight and Rhonda Stoops. The complaint was forwarded to Katie Kato, the human resource director at Palms West. O'Brien met with

Kato and described Dr. Chaparro's history of harassment, beginning with the phone calls. Kato believed that O'Brien's complaint was credible. O'Brien and Dr. Chaparro had no further contact after the November 11 incident.

Kato immediately undertook an investigation into the purported misconduct. She also offered O'Brien the employee assistance program. Kato forwarded the complaint to Heather Rohan, CEO of Palms West. The following day, November 13, Kato informed Mike Patterson, Dr. Chaparro's supervisor at Palms Neurosurgery, about the complaint. Patterson contacted Dr. Chaparro to arrange for a meeting with Kato on November 17.

Kato also granted O'Brien a leave of absence through November 22. Thereafter, Kato made several phone calls to O'Brien updating her on the ongoing investigation and advising her of available support offered by Palms West. Kato interviewed the two witnesses identified by O'Brien—Stowers and Quesada—and asked them to describe their accounts of the phone calls and the November 11 incident. Kato also removed O'Brien from caring for neurological patients and later switched her to the day shift to avoid possible encounters with Dr. Chaparro. O'Brien was scheduled to be moved from the telemetry unit to the emergency room to further reduce contact.

During the November 17, 2003 meeting, Dr. Chaparro met with CEO Rohan and then with Kato and Patterson. Kato explained the purpose of the meeting as a sexual harassment investigation. Dr. Chaparro immediately described the incident in the supply room, but explained that it had occurred in response to a long history of mutual flirting between O'Brien and him. Dr. Chaparro

---

4. Even so, O'Brien did not describe these incidents in a letter to her supervisor involving a problem with a co-worker, sent in late October 2003.

also admitted to the phone calls, but added that O'Brien had also called him. Dr. Chaparro further explained that the November 11 incident was the first time that O'Brien had rebuffed his advances. Kato noted that she also felt Dr. Chaparro was credible.

Following the November 17 meeting, Patterson, as Dr. Chaparro's supervisor, admonished Dr. Chaparro from having further contact with O'Brien. Patterson also advised that should Dr. Chaparro encounter O'Brien during his rounds at Palms West, any conversation was to remain strictly work related. Kato informed Dr. Chaparro that the findings of the investigation would be presented to CEO Rohan. She also advised that any further contact with O'Brien would be considered retaliation. Kato then met with O'Brien and advised her what was communicated to Dr. Chaparro.

Neither Kato nor Palms West disciplined Dr. Chaparro since he was not a hospital employee. Dr. Chaparro, however, was disciplined by Palms Neurosurgery. Patterson delivered a disciplinary action form stating that Dr. Chaparro admitted hugging and kissing O'Brien in the workplace. The form cautioned that any further contact with O'Brien, other than strictly professional, would result in his immediate termination. Kato presented her findings to the Physician Advisory Committee ("Committee"). The Committee is not part of the hospital, but oversees ethics issues and provides recommendations to the medical staff committee about doctors who have privileges at Palms West. The Committee instructed Dr. Chaparro that even consensual relationships are inappropriate at Palms West.

In her investigation summary, Kato indicated that she was unable to determine whether the conduct leading to the closet incident was consensual. The summary noted that there were many witnesses who observed O'Brien acting flirtatious with Dr. Chaparro, but that O'Brien's story also seemed credible. In any event, Kato's summary concluded that Dr. Chaparro's behavior was inappropriate. The summary also indicated that Dr. Chaparro had no contact with O'Brien after the November 11 supply room incident. Palms West took no further action against Dr. Chaparro.

### B. Palms West's Sexual Harassment Policy

Palms West has a written policy prohibiting sexual harassment in the work-place. The policy provides for a prompt and thorough investigation of all potential claims and further mandates that supervisors forward all reports of sexual harassment to human resources. Employees are educated on the policy when they are hired and receive the employee handbook and the code of conduct—which contain the policy. The policy identifies what types of conduct constitute sexual harassment and explains what to do if an employee experiences such conduct. Palms West employees are also required to attend an annual refresher course where the sexual harassment policy is discussed.[5]

### C. Testimony About O'Brien's Relationship With Dr. Chaparro

Four nurses (Stowers, Crawford, Smith, and Lewski), the telemetry unit secretary, Gladys Teasley, and a physician, Dr. Michael Zappa, testified about O'Brien's sometimes inappropriate wardrobe and her openly flirtatious behavior with physicians and other staff members. These witnesses also testified

---

5. O'Brien stated that she had received all the literature and training regarding Palms West's policy on sexual harassment, although, "she did not . . . pay attention to it."

that they had observed O'Brien and Dr. Chaparro flirt with each other and rub and hug one another. Teasley observed O'Brien and Dr. Chaparro leave the unit together on two occasions.[6]

Quesada testified on O'Brien's behalf. She stated that O'Brien did not dress inappropriately and that Dr. Chaparro would follow O'Brien around "like a puppy." She also corroborated O'Brien's account about Dr. Chaparro rubbing against her following the November 11 supply room incident. Quesada indicated that Dr. Chaparro stared her down on one occasion following the November 11 incident.

Dr. Chaparro described his relationship with O'Brien much differently than O'Brien's description. Dr. Chaparro indicated that he and O'Brien had been mutually flirting for several years and that it was well known that the two had a "thing." He admitted to calling O'Brien, but stated that she had given him her cell number. He stated that the two would hug each other frequently. He denied ever staring down Quesada.

### D. Facts Leading to O'Brien's Resignation

O'Brien contends that following her complaint about the November 11 incident, Palms West began to impermissibly schedule her and reprimand her for failing to show up for shifts for which she was not apprised. She also reported feeling ignored by supervisors, both in her job capacity and in her

request to transfer to the day shift. O'Brien stated that in light of the investigative report, which she felt downplayed Dr. Chaparro's conduct, she resigned on December 31, 2003.[7]

### E. O'Brien's Lawsuit Against Dr. Chaparro and Palms West

O'Brien brought suit against Dr. Chaparro alleging assault, battery, and intentional infliction of emotional distress. She later amended the complaint to include claims against Palms West for a sexually hostile work environment and retaliation. O'Brien alleged that the sexual harassment consisted of the five phone calls she received from Dr. Chaparro in late 2002, Dr. Chaparro's inappropriate comments and touching which began in May 2003, and the November 11 supply room incident. Ultimately, O'Brien and Dr. Chaparro settled; however, the hostile environment and retaliation claims against Palms West went to a jury trial.

Pretrial, the district court granted O'Brien's motion in limine to preclude the admission of evidence relating to Quesada's mental health. Palms West later moved for summary judgment, arguing that O'Brien had failed to set forth a prima facie case of sexual harassment or retaliation. It also moved for summary judgment on the issue of whether Dr. Chaparro was O'Brien's supervisor.[8] The district court denied the motion for summary judgment.[9]

---

6. None of O'Brien's performance reviews make any reference to her purported flirtatious behavior or style of dress.

7. O'Brien had already accepted a job with another hospital on December 19, 2003, before she had reviewed the results of the investigative report on December 31.

8. Palm West argued that the district court should instruct the jury on the *Faragher/Ellerth* elements for non-supervisory harassment, which sets a

higher standard than for supervisor-based harassment.

9. On the supervisor issue, the district court concluded that while "Dr. Chaparro has no direct authority to fire [O'Brien] or directly change the terms of her employment, ... he did direct her work with regard to patient care, the sole purpose of her employment." The district court further concluded that even though "scheduling, vacation, floor assignments, etc." are not deter-

As there is no standard jury instruction in the Eleventh Circuit for whether a supervisor relationship exists, the district court constructed an instruction using relevant case law and administrative regulations. The district court refused to use Palm West's suggested traditional definition of supervisor because of the unique situation presented by specialty doctors with hospital privileges who are not hospital employees.

During deliberations, the jury delivered two verdicts that were inconsistent with the jury instructions. Finally, the jury delivered a third verdict finding Palms West liable for the retaliation claim. Following a request by Palms West to poll the jury, Juror No. 2 indicated that it was not her verdict. Deliberations resumed and the district court later delivered an *Allen* charge, after the jury indicated that it had reached a decision but was deadlocked as to damages. Following the *Allen* charge, the jury returned two hours later with a verdict in the amount of $10,000.00 in damages against Palms West on the hostile environment claim, and finding no liability on the retaliation claim.

Thereafter, Palms West renewed its motion for Judgment as a Matter of Law, pursuant to Fed.R.Civ.P. 50(b), based on O'Brien's failure to state a prima facie hostile work environment claim, or in the alternative, for a new trial, pursuant to Rule 50(b) and Rule 59, based on the supervisor issue, the jury instruction explaining "supervisor," the *Allen* charge, and the ruling excluding Quesada's

mined by physicians, it was not dispositive that "Dr. Chaparro does have some supervisory function over [O'Brien]." Therefore, the district court sent the question of whether Dr. Chaparro was O'Brien's supervisor to the jury.

10.  O'Brien suggests in her brief that Palms West took tangible employment action against her based on a "constructive discharge" because of its response to her complaint against Dr. Chapar-

mental health history. The district court denied the motions and Palms West appealed.

## II.  STANDARD OF REVIEW

[1]  We review a Rule 50 motion de novo. *Chambless v. Louisiana–Pacific Corp.*, 481 F.3d 1345, 1348 (11th Cir.2007). " 'In doing so, we draw all inferences in favor of the non-moving party,' and 'affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the plaintiff].' " *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir.2006) (quoting *Telecom Technical Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir.2004)).

## III.  ANALYSIS

[2–4]  Title VII prohibits sex-based discrimination that alters the terms and conditions of employment. 42 U.S.C. § 2000e–2(a)(1). An employee can establish a violation against an employer in either of two ways: 1) through tangible employment action-i.e., discharge, demotion, pay decrease, etc.; or 2) through creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of the work. *See Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1300 (11th Cir.2007) (citing *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir.2004)). Here, it is the latter scenario that is at issue.[10]  Because

ro.  However, the jury explicitly rejected this charge, finding that O'Brien did not suffer adverse employment action in the form of a constructive discharge. Because O'Brien failed to cross-appeal the jury's finding, we are without opportunity to reconsider. *See, e.g., United States v. Sanchez*, 269 F.3d 1250, 1293 n. 7 (11th Cir.2001) (failure to cross-appeal deems issue waived and without merit). Even if we were consider this claim, we find that there was no

O'Brien did not suffer tangible employment action, Palms West may invoke the *Faragher/Ellerth* defense. *See Ellerth,* 524 U.S. at 762–63, 118 S.Ct. 2257; *see also Faragher,* 524 U.S. at 808, 118 S.Ct. 2275.

[5, 6]  An employer avoids liability under this defense if: 1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and 2) the employee "unreasonably failed to take advantage of any preventative or corrective opportunities [it] provided."[11] *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257.  *See also Baldwin,* 480 F.3d at 1303.  As an affirmative defense, the defendant bears the burden of establishing both of these elements.  *See id.* (citing *Frederick v. Sprint/United Mgmt. Co.,* 246 F.3d 1305, 1313 (11th Cir.2001)).

[7]  Going to the first element of the defense, the jury found that Palms West "exercised reasonable care to prevent any sexually harassing behavior in the workplace."  Because O'Brien did not cross-appeal this finding, we are only concerned with whether she unreasonably failed to take advantage of Palms West's sexual harassment policy, and if not, whether Palms responded by taking reasonable and prompt corrective action. *See Sanchez,* 269 F.3d at 1293 n. 7.

The dispositive question under this part of the analysis is whether O'Brien failed to put Palms West on notice when she reported the "harassing" phone calls to Stowers, thereby failing to trigger Palms West's duty to take reasonable and prompt corrective actions until after all of the relevant sexually harassing conduct had occurred. *See Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1363–64 (11th Cir.1999) (describing employee's duty to follow employer's harassment policy in order to put employer on "notice").

O'Brien contends that because she described the harassing phone calls to Stowers, Palms West had a duty to follow its own sexual harassment policy procedures. Citing to *Coates,* O'Brien maintains that this court need only look to Palms West's sexual harassment policy to determine "when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures." *Id.* at 1364.  According to O'Brien, she reported the phone calls to Stowers in early 2003, who, by the terms of Palm West's policy, was a designated representative for purposes of reporting sexual harassment.  Therefore, O'Brien maintains that Stowers was required, under the terms of Palms West's sexual harassment policy, to advise human resources of O'Brien's complaint.  Because Stowers was a designated representative under the sexual harassment policy, O'Brien argues that Palms West was on notice, and that Stowers's failure to report the complaint to human resources was dispositive of Palms West's failure to comply with its own policy.  This, according to O'Brien, was all that she needed to show

---

evidence in the record to support a claim of sexual harassment based on tangible employment action.

11.  The jury instruction closely tracked this language, stating:

> Do you find that [Palms West] has shown by a preponderance of the evidence that:
>   That [it] exercised reasonable care to prevent harassing behavior in the workplace?

[if yes, proceed]
That [O'Brien] unreasonably failed to take advantage of any preventative or corrective opportunities provided by [Palms West] to avoid or correct the harm? or
[O'Brien] took advantage of the preventative or corrective opportunities by [Palms West] and [Palms West] then responded by taking reasonable and prompt corrective action?

under *Coates* to negate the *Faragher/Ellerth* affirmative defense.

O'Brien's argument assumes that her conversation with Stowers was sufficient to reasonably put Stowers on notice that the phone calls constituted sexual harassment. According to Palms West, and as Stowers testified, even though O'Brien referred to Dr. Chaparro's phone calls as "harassing," Stowers took this to mean "annoying." All that O'Brien indicated to Stowers during the conversation was that Dr. Chaparro had phoned her late at night on as many as five occasions asking her to meet him for a drink or to have dinner. There is no indication that O'Brien suggested that any sexually explicit remarks or even sexual innuendos were made during these phone calls. The only information that O'Brien relayed to Stowers was that Dr. Chaparro had called five times asking her out on dates. O'Brien suggests that whether this was enough to have put Palms West on notice about the harassment was a factual question appropriately submitted to the jury.

In *Coates*, the plaintiff showed her plant supervisor a letter from a co-worker that stated "From the Desk of Ernie Long, Hey Sweetheart $100 for 45 minutes of hugging and kissing or $100 for stop loving Vickie guarantee." *Id.* at 1365. We found this note was not sufficient to reasonably place the plant supervisor on notice of sexual harassment. *Id.* We noted that the letter was produced in the context of an unrelated work conversation and that the plaintiff did not indicate that her "receipt of the note represented a problem about which she was concerned or that required [the supervisor's]

immediate attention." *Id.* While genuine issues of fact regarding the supervisor's notice may be submitted to the jury, *see Frederick*, 246 F.3d at 1316, here it appears that O'Brien's conversation with Stowers did not put Palms West on notice as a matter of law. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300–01 (11th Cir.2000) (relaying a particular incident that plaintiff found harassing to supervisor was not enough to put employer on notice of sexual harassment or that plaintiff wanted employer to take action).

At best, the phone calls, as described by O'Brien, amounted to co-worker congeniality. At worst, they described a persistent but non-threatening suitor, which still does not amount to harassment.[12] *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (noting that "intersexual flirtation" is not sexual harassment). *See also Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 585 (11th Cir.2000) ("While frequently calling an employee at home and making even innocuous inquiries may be annoying or inappropriate behavior, it does not equal severe or pervasive sexual harassment ...."). Even more, is the fact that O'Brien requested that Stowers not report the incident and premised the complaint on Stowers's promise of confidentiality. We have held, albeit in an unpublished opinion, that "if [the plaintiff] did not want [the harassing behavior] reported or acted upon, then [the employer] would not have been placed on proper notice of the harassment ...." *Olson v. Lowe's Home Ctrs., Inc.*, 130

---

12. O'Brien's assertion (contained in a letter dated March 2, 2007 to the Court) that the opinion in *Valentine v. City of Chicago*, 452 F.3d 670 (7th Cir.2006), supports her claim is unavailing. There, the Seventh Circuit noted that "aggravating" and "rude" behavior taken alone are not sufficient to put an employer on notice of sexual

harassment. *Id.* at 680. Dispositive to *Valentine*'s finding that the employer was on notice was that the plaintiff had also complained of six instances of unwanted touching by a co-worker. *Id.* This fact clearly distinguishes O'Brien's conversation with Stowers in which she only described Dr. Chaparro's phone calls.

2779       NURSE "BE" v. COLUMBIA PALMS WEST HOSP. LTD.

Fed.Appx. 380, 391 n.21 (11th Cir.2005); *see also Baldwin*, 480 F.3d at 1307 ("One of the primary obligations that the employee has under [the rules promulgated by *Faragher* and *Ellerth*] is to take *full advantage* of the employer's preventative measures.") (emphasis added). We find *Olson's* reasoning persuasive in the context of this appeal given O'Brien's insistence that the complaint remain confidential and not be reported.[13] Therefore, the substance of O'Brien's complaint coupled with the fact that she requested Stowers not to report it was insufficient to place Palms West on notice of the sexual harassment.[14]

[8, 9]   We reiterate that "[a]ll that is required of an investigation is reasonableness in all of the circumstances ...." *Id.* at 1304. Here, Stowers fulfilled O'Brien's request to remove her phone number from the staff directory and to keep the matter confidential. Thereafter, the phone calls stopped and O'Brien never reported any further problems with Dr. Chaparro until many months later.

We are unwilling to conclude that Stowers's response was unreasonable under this set of facts.

[10]   The next time O'Brien reported Dr. Chaparro's behavior was following the November 11, 2003 supply room incident, when she reported her complaint to supervisors Knight and Stoop. Palms West was never apprised of any of Dr. Chaparro's behavior toward O'Brien (other than the phone calls) as she did not report any of the sexual harassment until after all of the relevant conduct had occurred. In *Walton*, the plaintiff waited five days after the last alleged incident to report harassment that had began months earlier. 347 F.3d at 1290. We explained that had the plaintiff reported the harassing incidents immediately after they occurred, most of the harassment would have been avoided. *Id.* The same is true in O'Brien's case, as she never gave Palms West an opportunity to rectify Dr. Chaparro's behavior until after it had persisted for

---

13.  O'Brien's citation to *Malik v. Carrier Corp.*, 202 F.3d 97 (2d Cir.2000), does not warrant a different result. *Malik* advised "[p]rudent employers will compel harassing employees to cease all such conduct and will not, even at the victim's request, tolerate inappropriate conduct that *may, if not halted immediately, create a hostile environment.*" *Id.* at 106 (emphasis added). However, the plaintiff in *Malik* had complained about explicitly sexual comments, unlike O'Brien, who only advised Stowers about several non-sexually related phone calls. Thus, there was no indication that Dr. Chaparro posed a risk of creating a sexually hostile environment to O'Brien. Similarly *O'Dell v. Trans World Entm't Corp.*, 153 F.Supp.2d 378 (S.D.N.Y.2001), and *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15 (1st Cir.2003), also cited by O'Brien, are inapposite as those decisions rely on *Malik* for the same proposition. *See also Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1186 (9th Cir.2005) (advising that "even if a more thorough investigation and disciplinary measures for the harasser could in some circumstances be essential in spite of a

harassed employee's request to handle the situation [by herself], there can be no such duty [where the employee does not apprise the employer as to the sexual nature of the harassment].").

14.  O'Brien contends that even if her conversation with Stowers did not put Palms West on notice of Dr. Chaparro's sexual harassment, this requirement should be excused because she was "terrified" with what would happen to her job. We recently rejected this argument in *Baldwin* where we stated "[t]he *Faragher* and *Ellerth* decisions present employees who are victims of harassment with a hard choice: assist in the prevention of harassment by promptly reporting it to the employer, or lose the opportunity to successfully prosecute a Title VII claim based on the harassment." 480 F.3d at 1307 (citation omitted). *See also Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1290–91 (11th Cir. 2003) ("[A]bsent a credible threat of retaliation, ... subjective fears of reprisal do not excuse ... failure to report ... alleged harassment.").

NURSE "BE" v. COLUMBIA PALMS WEST HOSP. LTD.          2780

almost ten months. Therefore, Palms West cannot be held accountable when it was not put on notice about the behavior. *Id.* ("[T]he victim of the alleged harassment has an obligation to use reasonable care to avoid harm where possible.").

Finally, it is clear that once Palms West was put on notice of Dr. Chaparro's behavior on November 11, 2003, it responded by taking "reasonable and prompt corrective action." Per the terms of the sexual harassment policy, supervisors Knight and Stoop immediately relayed O'Brien's complaint to human resource director Kato, who commenced an investigation the following day. Kato also forwarded the complaint to Palms West CEO Rohan. Additionally, Kato contacted Patterson, Dr. Chaparro's supervisor, on November 13. Kato arranged a meeting with Patterson and Dr. Chaparro on November 13. Meanwhile, O'Brien was granted a leave of absence and was removed from neurosurgical patient care to avoid further contact with Dr. Chaparro. During her meeting with Dr. Chaparro, Kato made clear that any further interaction with O'Brien would be deemed inappropriate and considered retaliation. Kato also passed her investigative report along to Dr. Chaparro's superiors, who

delivered a disciplinary action form mandating that any further unprofessional contact with O'Brien would result in "immediate termination." Thereafter, O'Brien did not report any further incidents with Dr. Chaparro. Accordingly, it is clear that Palms West, which commenced its investigation within one day of the complaint, met its duty by taking prompt and corrective action. *See Walton,* 347 F.3d at 1288 (noting that the EEOC requires remedial measures "to stop the harassment" and "ensure that the harassment does not recur," and further noting that where "substantive measures ... are sufficient to address the harassing behavior, complaints about the process ... ring hollow").

We need not reach the remainder of Palms West's issues on appeal in light of our resolution of the *Faragher/Ellerth* defense. *See, e.g., Negron v. City of Miami Beach, Fla.,* 113 F.3d 1563, 1571 (11th Cir.1997).

IV.  CONCLUSION

Accordingly, we REVERSE the district court's denial of judgment as a matter of law in favor of Palms West, and VACATE the jury award and the district court's award of costs and fees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia